Let me be the first to say good afternoon, Your Honors. I will attempt to intervene and observe what time I can. Your Honors, if we were here on the director's heel, this would be a very easy case. I'd stand up and cite Luna v. Cambra, Alcala v. Woodford, Brown v. Myers, and I would sit down, because those cases are directly on point. In this case, as in those cases, the entire defense was that the defendant didn't do it, he wasn't there when the crime took place. In this case, as in those cases, trial counsel failed to put on or even to interview alibi witnesses who could have testified that the appellant was indeed somewhere else at the time of the shooting. Luna, Brown v. Myers, Alcala, Lord v. Wood, other cases we cited, hold that when there is such a failure to investigate and produce alibi witnesses, that they hold that such a failure is ineffective assistance of counsel, and reversal is required, particularly when the case is otherwise close and the prosecution evidence is weak. As the State's own brief acknowledges, the prosecution evidence in this case was not strong. The case was very close. On direct appeal, that's all that would need to be said. This case arises under AEDPA. So the question for the Court is whether that fact alone compels an entirely different result. It does not. The State contends that this Court must defer to the result reached by the California courts, even though those courts never offered a word, a single word of explanation for their decision to reject Eric Parker's claim. As this Court has repeatedly held, silent State court decisions do not warrant that sort of fulsome deference. In a very real sense, there's nothing there to defer to. Rather, an independent review of the record is required to determine if the State court's decision was an unreasonable application of Federal law. As this is whom we agree with you, counsel, you rely on Luna and Brown. Yes. And aren't these cases clearly distinguishable? In Luna and Brown, an alibi was offered. Here, there was a decision by counsel not to offer an alibi. What – how would you distinguish those cases or how would you apply them? I respectfully beg to differ. The defense, the only defense that was offered here was he wasn't there. If you look in a dictionary, and I looked in several, that is the definition of an alibi defense. Not to mince words, the fact that in that case they actually put on affirmative evidence, and here they didn't, in some ways makes this case even worse. But in any event, there was nothing inconsistent here. There would have been absolutely nothing inconsistent here in putting on the alibi evidence. It would have – the alibi witnesses would merely have supported that scant defense that actually was offered at trial in this case. Counsel, wasn't there an evidentiary hearing on this case? No, ma'am, there was not. Oh, there was not. No. Although the Petitioner consistently requested an evidentiary hearing at every stage in the State and Federal courts, he has never been afforded one. There was the closest that there came to an evidentiary hearing was on our last claim, which I frankly was not going to argue today, about one of the juror misconduct claims, and on a new trial motion there was some – there was a hearing on that, although no real taking of evidence. But as – What was the attorney explaining? Nothing. At no point. And the significance there, I think, is that we have – that the Petitioner has, under both the State and Federal standards, presented ample proof that there was ineffective assistance of counsel here. He's – the sworn allegations of his complaint, the evidence that he was presented is enough to sustain that claim because they are uncontradicted. The State has had 10 years, 10 years, and various levels of review in which they could have gathered evidence, they could have interviewed witnesses, they certainly could have gotten a declaration from trial counsel, who in other cases has been more than willing to give the State declarations to destroy his former client's case when it depends on his ineffectiveness. Specifically, I think I cited Brodick v. Canberra, which came before this Court. And in Judge Berzon's dissenting opinion there, she lays out this attorney, Robert Bellis's, ample efforts on behalf of the State to torpedo his former client's case. The State hasn't done that. I believe that we are entitled to the issuance of the writ outright. That's – I would say that on the basis of the failure to interview and adduce the alibi evidence taken alone or particularly taken along with the failure to adduce the impeachment evidence of the mother of the key witness to the case. Those alone or together, I believe, require reversal. I'm awaiting any questions the Court may have. May I? Yes, you may. May it please the Court. Peggy Ruthbrick, deputy attorney general for Respondent. I'd like to start with a quote from Strickland. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. And I think that's exactly what occurred in this case. Mr. Bellis, the trial attorney, made an informed decision that given the weaknesses in the prosecution's case, the best way to defend this case was not to put on an alibi that would then shift the entire focus of the trial. Then the closing argument would not be, are you going to convict a man of murder based on these four recanted identifications? Then it would be the prosecution saying, look at the weakness of this alibi defense. It would have changed the entire... If that were true, it would be really easy to get a declaration from the attorney to that effect, and then it would be slam dunk. It was a strategic decision and a story. So why was there such a fight to not have an evidentiary hearing and not to hear from the attorney? Well, there's never been a fight not to have an evidentiary hearing. But let me first say... Did you agree to an evidentiary... Did the state agree to an evidentiary hearing? Well, no, we never got that far. But let me first say that the defense attorney certainly could have gotten a declaration from Mr. Bellis, too. There was nothing to prevent him, and it seems suspicious that he didn't, in light of all the many other declarations that were submitted, including from the defense investigator, it seems logical that that must be because Mr. Bellis was going to say, yes, there was a tactical reason. It was because I didn't want to muddy the waters and I was relying on the weakness of the prosecution case. But when this issue was presented on habeas corpus, it was simply denied. So we never got to the point where we were responding one way or the other. Counsel, how do you respond to the Wiggins case where the court held that failure to continue an investigation constituted ineffective assistance of counsel? Well, I think this case is quite distinguishable. Mr. Bellis was completely aware of the potential alibi case. He discussed it with his client, and that's in Mr. Parker's declaration, which is in the excerpts of record. And he personally interviewed Antoinette Green, who was part of that alibi defense. And there were a number of police reports interviewing both Antoinette Green and Lakeisha Wade that laid out the entire defense. So Mr. Bellis was totally aware of it, and that's what distinguishes the case from Wiggins, where they only went to a certain point and then there was something more that they could have discovered. None of the declarations, none of the allegations in this case have ever said, here's what more he could have discovered if he had done something else. It was all there. So he knew everything that they are now saying he should have done. He clearly was aware of the alibi. And based on that evidence, he made an informed tactical decision not to present that. Now are you claiming that there is no further investigation he should have done or could have done? Well, I don't think that's the test. The test is whether the investigation he made was reasonable. And I think it clearly was in this case. What you're saying is that he knew all these alibi witnesses, he thought they were weak, and he decided not to call them. I'm sorry. I didn't hear this middle part. He knew who the alibi witnesses were. He thought they were weak, and he thought that it would prejudice his client. Yes. And I think even more to the point, he thought that the better tactical decision would be to make the case simple. Are you actually going to rely on these four recanted witnesses, this shaky prosecution case? That was his approach. Now, I'd like to go back to a question that Judge Rawlinson asked about the nature of the evidence we have. I think it's important to remember that Strickland says that there is a presumption that counsel's actions are considered sound trial strategy. And so that presumption applies in every case, whether it's a direct appeal case or an ADPA case or whatever. And in this case, the record clearly shows what the trial strategy was. So you don't even really need a declaration from Mr. Bellis because it's obvious on the record. Opposing counsel's point was the alibi witnesses were not inconsistent with that strategy. You could have still had the strategy of attacking the government's case, but in addition to that, having the alibi witnesses, if his testimony was, or his theory was, I wasn't there, the alibi witnesses are consistent with that theory. What's your response? Well, his defense was not exactly I wasn't there. His defense was the identification witnesses are insufficient to convict a murder. And there is a difference. But my response to that is representation is an art and it's not a science. And in this case, even though it might not technically have been inconsistent, it was a simpler strategy to have the focus on the weaknesses of the prosecution case instead of the weaknesses in the alibi case. And it's our position that the alibi would have been very impeachable. These were all friends and relations. The telephone part of the alibi actually was consistent with his guilt because he could have ordered the shooting, sped a mile and a half away, and been at the house to answer the phone call. And the prosecution would have made all these points, too. So instead of allowing the prosecutor to turn the tables and point to the defense alibi evidence and say, look how weak that is, ladies and gentlemen, he focused on just saying it's the prosecution case that's weak. You can't convict based on that. And that's what you hire an attorney to do, to make those kind of strategic decisions. And Strickland says that those kinds of strategic distinctions between plausible options are virtually unchallengeable. That's a quote from Strickland. What's your response to opposing counsel's observation that the State has obtained declarations from this attorney in the past to assist on habeas review? I believe that we did in that case. There actually was an evidentiary hearing ordered in that case. I don't recall if we got the declaration at that point or if it was earlier in the game. That's certainly possible. But again, there is a presumption that his actions are considered sound trial strategy. That same presumption was in the case where you got the declaration. Well, that is a totally different case. That's – that leads into a point that I'd like to make, that these kinds of cases are so fact-based that it's hard to compare one case to another. And the circuit cases that the Petitioner has cited, I think, are distinguishable for that reason. In all of those cases that have been discussed, I think, at length in the briefs, and they were mentioned here in the initial argument, those are cases where the defense attorney made the decision to present the alibi. So once you do that, then you have to effectively present it. And you can't leave your client hanging out to dry and just have his testimony alone, saying, well, I was with these other people, and then not call the other people. And that's what happened in every single one of those cases. But let me ask here. There were several things the attorney did that would leave me to be worried about this case. For instance, he did not investigate the testimony of the witnesses. Now, he may have ended up not putting them on the stand, but how could he make an informed judgment about whether or not to put them on the stand or whether to go just with the government's, quote, weak case, without investigating and interviewing these people? Well, I'm not sure what Your Honor means by investigating. It's our position that he did. He was fully aware of the alibi. And he had personally interviewed Antoinette Green. His investigator had interviewed her twice. He – there were a number of police reports saying exactly what these witnesses now say in their declarations, that he had gotten in discovery. And, in fact, that's how Mr. Parker remembered his alibi. At first he said, I don't know where I was that day. And then they got Lakeisha Wade's police report, and he said, oh, yeah, that's where I was now, I remember. Counsel, you're not suggesting, are you, that reading a police report is the same as interviewing a witness? Well, no, but it can inform the attorney sufficiently to know whether or not there is going to be something more that has to be done, especially when there is a weak prosecution case. What about interviewing the teenager's mother, who would say that immediately after the shooting, she told him he didn't see anything, and he told her he didn't see anything? He did interview her, as a matter of fact, Your Honor. And she apparently, as the defense investigator put it, had a drinking problem. So that was certainly – that's one reason that's obvious on the face of the record why he would be leery of calling her. Imagine if she had shown up drunk at trial. I mean, if she's actually an alcoholic, it's going to be hard to get her to not drink on a particular day. And it could have been devastating to the case if she had actually been drunk at the trial and the jurors had seen that. But even beyond that, the jurors could have seen her testimony as simply a mother's attempt to downplay her son's role in this, because the defendant is so dangerous that he's going to come and get us. And that was – that would also have emphasized the reason why all these witnesses recanted. There was evidence in the record that that's what happened. Mr. Parker came back to the scene of the shooting the next day and said, you youngsters better not be snitching. And it was after that that they started to get cold feet. At the preliminary hearing, they started to back off their story by the time of the trial. Some or all had recanted. And if the mother had come in and said – made this statement, it could easily have been seen simply as a mother trying to keep her son out of the case. And he said he interviewed the mother? Yes. He personally interviewed the mother. He personally interviewed the mother. Yes, he did. That's in the defense investigator's declaration. Well, not any. The defense investigator or the lawyer interviewed the mother? Both did. All right. Mr. Bellis, the trial attorney, personally interviewed Mrs. Kincaid. Where is that in the record? Oh, okay. You can see that. Okay. Okay. Okay. Well, then let me ask you about the case of Lord v. Wood. In that case, the defense counsel's strategy was identical. Decided to go upon the weakness of the prosecution's witness, and the Court held ineffective decisions of counsel. What is – how do you distinguish that case? Well, what happened in that case – there was actually a hearing in that case, and the defense attorney misconstrued what the potential alibi witnesses could say. And I will say that case is also distinguishable, because they weren't exactly alibi witnesses in the sense that all the other cases in this case are. In that case, it was some people who would have said that they saw the victim, who supposedly had been killed, that they saw her the day after the killing was supposed to have taken place. So it wasn't that they were going to say, I was with a defendant or something like that. It was slightly different in that respect. But the attorney misread those witnesses' statements and thought that they were vague as to time, when, in fact, they were not. And so for that reason, the fact that he had not personally interviewed them and he misread the record, the Court found that that was ineffective not to present them. And so I think this case is distinguishable, because there's never been any suggestion that the witnesses are going to say something different or that Mr. Bellows didn't have a full understanding of what they could potentially have said. But he didn't interview them. I mean, most of them. He interviewed some of them. Just some of them, but not all of them. And we don't know if he interviewed Ms. Bellow or Lakeisha Wade. That's not in the record one way or the other. So he may have. Those Lord and Alcala, Brown, Riley, and Luna, all those cases, those cases are a step beyond here. Those are the cases where the attorney made the decision to put on an alibi witness and an alibi defense. In this case, Mr. Bellows made the decision before that not to present a defense at all. And the question is, was that reasonable? Could the Court say that no reasonable attorney would take that approach, because that's what the kind of deferential, strictly approach requires? And it's our position that that's exactly what he hired his attorney to do, to make those kinds of decisions and decide how best to present the case to this particular jury under these particular circumstances, seeing how the prosecution case came in, and seeing witness after witness say, I didn't identify him, I didn't even have an interview at all with the police, I don't know what you're talking about, and then relying on that and keeping the focus on the flaws in the prosecution case, instead of bringing in all this other evidence that would have allowed the whole focus of the case would have changed at that point. And I think that clearly distinguishes the case from all of the circuit cases. And I don't think those cases can be fairly read to say that in every case where there is a potential alibi, the defense attorney must put it on. I think clearly that's the kind of decision that a defense attorney has to make. And so there is no question that that's the case. Kagan, Let me try another case. Let me try another case, the Avea case, a nice, perfect case held that counsel can hardly be said to have made a strategic choice when he has not yet obtained the facts on which a decision could be made. Is it your argument that he had obtained the facts? Yes. Yes. A sufficient number of the facts? Absolutely. As I said before, none of the evidence presented here by way of the potential alibi, witnesses, declarations, adds anything new to what we know Mr. Bellis knew from personally interviewing the witnesses that he did and from reading their police reports. There's no fact that has ever been pointed out that is the brand-new fact. Here's the smoking gun. Here's what he would have discovered if he had done something further. There isn't anything. So he was fully aware of what the potential alibi could have been, but chose not to present it in the exercise of his art as the as an attorney. And if there's no further questions. Also, his defense of the prosecution case was the witnesses now don't remember. The jury could have concluded that the witnesses now don't remember because somebody talked to them. If he presents the alibi evidence and that falls through, it doesn't help him very much. Correct. So that's what you're thinking? Yes. That's his discretionary call. Yes. Within the broad range of discretion that an attorney has, layered on top of the presumptions that they're rendering effective assistance, the presumption that their actions are, in fact, sound trial strategy. And again, the question is, can we say that no reasonable attorney would have approached the case in this way? And I think the answer is clearly no. Thank you, counsel. Rebuttal. Counsel, my question is, first of all, is there anything in the record to indicate that a declaration from counsel was not submitted? I'm sorry, I didn't understand. Why is there anything in the record to indicate that? There's nothing in the record to indicate it. I mean, I could explain it, but it's not in the record. Excuse me. The Mrs. Rufre wanted a smoking gun, and I always love to come up with it. Ramont Johnson. All of the alibi evidence that counsel referred to had to do with a round-robin of telephone calls, one to another. Ramont Johnson wasn't part of the round-robin of telephone calls. He stated, he declared that he was with Eric Parker all day that day, that they were together at the apartment building that he lived and Geraldine Ford lived all day. Counsel never interviewed Ramont Johnson. His investigator never interviewed Ramont Johnson. But his first declaration wasn't that detailed, though. His first declaration had all of these details, except that he did not he did not specifically say that counsel never interviewed me. That's the only that's the only thing added in his second declaration. The fact that counsel didn't interview him, however, is a sworn allegation of all of the petitions that were submitted. Counsel, opposing counsel raised the point that you could have gotten a declaration from the trial counsel as well. Well, I couldn't. Let's, you know, again, I don't want to speak outside the record. I will say that for me to get a declaration from trial counsel would depend on trial counsel's willingness to cooperate with us, and we do know for a fact that in the past he's shown a greater willingness to cooperate with the State in these cases. And I will leave it at that. The really essential point that opposing counsel kept hammering is, you know, this was an informed decision, she said, and in the exercise of his art, et cetera. As Judge Nelson rightly pointed out, this was not an informed decision, and there is no deference to be given to counsel when they don't make an informed decision. It's not an informed decision if you don't talk to the witnesses. I mean, the supposed informed decision is these would be weak witnesses. How could he assess that? He talked to Antoinette Green, who was not particularly a pertinent alibi witness, but never talked to her about the alibi. That's clear from her declaration. He never talked to Lakeisha Wade. He never talked to Betty Bellow. He never talked to Ramont Johnson. In what way was his decision that their testimony could somehow damage the case an informed decision? What about the presumption? Is the presumption rebutted? I believe it is, because the presumption, for one thing, what I just said goes right to the presumption. There is no presumption. There is no presumption if counsel does not investigate. It says that right in Strickland. But there are cases that say you don't have to interview every single witness. No, you don't have to interview every single witness. But if your guy is said to have been on a certain corner killing somebody and there are four people who are ready to tell you that he wasn't, I'm ready to say that you have to tell me. Well, the telephone evidence was a little shaky. It was a little shaky, so that was not ironclad evidence. You could poke holes in the telephone evidence very easily. And the same could be said with greater force of the evidence in Luna v. Canberra. And the same could be said with greater force of the evidence in Riley v. Payne. This Court's cases have consistently said you don't have to have ironclad evidence to have some obligation, first of all, to investigate it, and second of all, to put it on if it is persuasive. Well, he investigated it. He just didn't interview the witnesses. So there's a difference between investigating and interviewing the witnesses. You don't have to interview all of the witnesses. He didn't interview any of the witnesses. Judge Rollins, I'm sorry to be so heated, but I cannot agree that he investigated. He did nothing to look into this. He didn't talk to any of these people. He didn't send these investigators. Gator did talk to them. The only person they talked to was in Amsterdam and Green, and that was about something else entirely. Didn't he talk to the mother? He did talk to the mother. You know, and that's a separate issue. And I would like to get to that in just a second. The as for the Before you get there, counsel, what's your best case authority for the proposition that investigation equals interview? The, forgive me. In Alcala, for instance, counsel knew of the other case, but he didn't talk to the other witnesses, didn't talk to them, and didn't put it on. I want to hear the absolute best case that you think would compel us to rule that failure to interview equals failure to investigate. I'm not advancing that proposition, Judge. Well, I thought that's what you said. No, ma'am. I'm saying that he did not do any investigation. I'm not saying that he did an investigation but didn't interview, and that somehow that's where Peto did his investigation. I'm saying How would he investigate if he didn't interview? What would constitute an investigation short of an interview? Well, my point exactly. In this circumstance, I don't see how he investigates without talking to the witnesses and seeing what they have. So he had an investigator talk to him? He did not have an investigator. No, but if he did, would that be Sure. That would be something. So it's your view that you could never investigate by just looking at documents? No. So in the statements, that's not an investigation, in your view? No. That certainly isn't. I think that if somebody else had induced – I mean, there was a case cited in the Respondents' Brief, in the Red Brief, that I distinguished because a case, a Ninth Circuit case from the 80s, where they said you don't have to talk to every witness, because in that case, counsel had gotten all of the discovery, had sent his investigator to talk to all of the witnesses, and had read all of the interviews with all of those witnesses. There, I believe, the claim of ineffective assistance for failure to investigate was properly denied, because he didn't have to interview everybody. But he did have to investigate, and it didn't happen here. The weak – you know, the weakness of – well, I believe that I've touched on that. The point of whether they have ever agreed to an evidentiary hearing, they have consistently opposed our requests for evidentiary hearing, including in the district court. The point that counsel said that the round-robin of telephone calls was consistent with his guilt, I think, is really stretching it. It would have been difficult, if not impossible, under – you know, under the evidence that – difficult, but not technically impossible. It would have been impractical. The prejudice problem? The prejudice problem? Yes. Yeah. I'd be more than happy to, Your Honor. In looking at the prejudice, you start off with the – excuse me, I have a quote from the opposing counsel's brief. You start off by looking at how strong the case was against him. And as the Respondent's brief points out, there was no physical evidence connecting Parker to the murder. Each of the four eyewitnesses who identified Parker recanted in whole or in part. And the identification testimony was presented primarily through prior inconsistent statements. If he adds to this the patent unreliability and self-interest of those witnesses, the length of the deliberations, the jury's difficulty in reaching a verdict, those are all traditional indicia of a very close case. And you put, on the other hand, the combined effect of putting forth actual witnesses who would say he was somewhere else at the time and miscontades, that's the mother's additional impeachment evidence, I submit it's very difficult not to visualize at least a reasonable probability that absent these errors, the fact finder would have had a reasonable doubt regarding Tilt. The point about this Court's prior cases being very fact-based, they are very fact-based. This is true to an extent. They are awfully similar, and they are awfully similar to the case at Barr. There are differences that can be found. The question, as always in appellate review, is, is there a principal distinction that can be made? I submit there is no principal distinction to be made between this, this case and this Court's precedent. The point about the mother's testimony could have been demonstrated by the mother's testimony. I beg to differ. She was not – she wasn't coming in as an alibi witness. For what it's worth, the investigator didn't say she had a drinking problem. He said she may have had a drinking problem, but she appeared to be a sincere, believable, and persuasive witness, is what he said. So from that, counsel posits the expectation that she would show up drunk and that would somehow devastate the defense. I don't see how that would happen. She wasn't showing up to prove some point affirmatively for the defense. She was showing up to say what her son told her. The – we really do know that he didn't talk to those witnesses, and I won't belabor that point except to say that the evidence we've submitted has, in Henry Kissinger's words, the additional virtue of being the truth. Counsel, the fact that he talked to the mother of the teenager, how does that change your argument? So he talked to her and he still didn't put it on. How does that change your argument? It's a different argument. My argument as to the mother is a separate argument than the argument as to the alibi witness. What is that argument? The argument is that there was no excuse. There was nothing to be lost by failing to put her on the – by putting her on the stand. Even though she had a drinking problem? Even though she had a drinking problem. If she blows up on the stand, she blows up on the stand. Isn't that Monday morning quarterback? I submit, well, Your Honor, I can always be accused of being a Monday. That's my profession. But the thing about it is, I mean, is it reasonable? If he saw the witness, he was able to gauge how, you know, what effect she would have on the jury, why don't we defer to that? He was the trial counselor. He interviewed. That's a – how can we say that it wasn't reasonable for him to decide that she wouldn't make a good impression as a witness? Well, the – just as I don't – I don't subscribe to any rules about there is ineffective assistance unless you interview all witnesses, I also don't think that there's a rule that as long as you interview the witness, that your decision not to put the witness on the stand preserves deference. What I attempted to explain in the briefs is that there was nothing to lose. He had nothing to lose by putting her on, and she potentially could have provided the most devastating impeachment of the key prosecution witness. I have one more thing to say, which is Ms. Ruffray spoke eloquently about this being an art and not a science. But this art, if you want to call it that, was one practiced on the future of this young man's entire life. And this practitioner of the art was lazy in his art, and he was sloppy in his art. And his client is spending his life in prison as a result. I believe that he deserved at least a fair trial and decent representation before he faced that consequence. Thank you. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the court, and this court is adjourned.
judges: D.W. Nelson, Rawlinson, Bea